IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


ANNA R. SKAGGS-SILEN                                                    PLAINTIFF


         v.                        CIVIL NO. 5:16-CV-5172

NANCY A. BERRYHILL, [1] Acting Commissioner,
Social Security Administration                                          DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Anna R. Skaggs-Silen, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits under the provision of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed her current application for DIB on October 20, 2014, alleging an inability to work since May 20, 2014, due to degenerative disc disease, fibromyalgia, irritable bowel syndrome, crohn's disease, chronic lower back and hip pain, chronic fatigue syndrome, insomnia, anxiety, hypothyroidism, borderline autism, and adult

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

ADHD. (Doc. 13, pp. 69-70, 82). For DIB purposes, Plaintiff maintained insured status through December 31, 2019. (Doc. 13, pp. 69, 82). An administrative hearing was held on December 14, 2015, at which Plaintiff appeared with counsel and testified. (Doc. 13, pp. 32-67).

By written decision dated February 8, 2016, the ALJ found that Plaintiff had severe impairments of chronic pain syndrome, obesity, and anxiety. (Doc. 13, p. 17). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 13, pp. 18-20). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 CFR § 404.1567(b), except that Plaintiff could understand, remember, and carry out more than simple tasks and instructions, but no complex instructions or tasks. (Doc. 13, pp. 20-24). With the help of a vocational expert (VE), the ALJ determined that Plaintiff was capable of performing past relevant work as a receptionist and file clerk. (Doc. 13, pp. 24-25).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on May 14, 2016. (Doc. 13, pp. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Docs. 5, 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 14, 15).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520(a)(4). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion:

Plaintiff argues the following issues on appeal: 1) the ALJ failed to fully and fairly develop the record; 2) the ALJ erred in his credibility determination; 3) the ALJ erred in giving Dr. Daidon's Medical Source Statement little weight; and 4) the ALJ erred in finding that Plaintiff could perform her past relevant work. (Doc. 14). [2]

#### A. Full and Fair Development of the Record:

Plaintiff argues that the ALJ erred in failing to fully develop the record by failing to order a consultative physical examination as well as a consultative mental examination in order to have a sufficient record to make a decision. (Doc. 14, p. 1-3). The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press

---

[2] The Court has reordered Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner.

her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).

In this case, the record consists of physical RFC assessments and psychiatric review techniques completed by non-examining medical consultants, a Medical Source Statement form completed by a treating physician, and Plaintiff's medical records, which included two years of clinic notes from her treating physician. After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### B.     Subjective Complaints and Symptom Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit

observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. Plaintiff testified at a hearing before the ALJ on December 14, 2015, that she was unable to work because she could only stand and sit for short periods of time, despite the methadone and other medications that she was taking. (Doc. 13, p. 46). However, in a Function Report completed on November 14, 2014, Plaintiff stated that she obtained guardianship of her eight-year-old granddaughter when she was one week old and has cared for her since that time. (Doc. 13, p. 198). Plaintiff reported that she prepared the child's meals; did her laundry; and played with her when she was able. (Doc. 13, p. 198). Plaintiff reported that she fed, watered, and otherwise cared for her thirteen-year-old cat and two dogs. (Doc. 13, p. 198). Plaintiff stated that it took her almost an hour to get dressed and that she had a skin condition that caused her legs to bleed when she shaved them, but otherwise, she had no problems with personal care. (Doc. 13, p. 198). Plaintiff needed no reminders to care for herself. (Doc. 13, p. 199). She also prepared simple meals; did laundry; and cleaned her house, although she stated that cleaning could take her all day. (Doc. 13, p. 199). Plaintiff reported that she could walk short distances, drive a car, ride in a car, go out alone, shop in stores for food and clothing, pay bills, count change, handle a savings account, and use a checkbook or money order. (Doc. 13, p. 200). Plaintiff noted that her husband, who is also disabled, would also help care for the pets and go to the grocery store for her when needed. (Doc. 13, pp. 198, 200). Plaintiff stated that she enjoyed watching television, writing and doing "family things." (Doc. 13, p. 201). Plaintiff visits with friends on the phone daily and will visit them at their homes on occasion; she has no trouble getting

6

along with others; and she follows written and spoken instructions very well. (Doc., 13, p. 202). Plaintiff reported that she used a cane at times for ambulation; that her pain was improved with her medication; and that she had no side effects from her medication. (Doc. 13, pp. 203-204).

This level of activity belies Plaintiff's complaints of pain and limitation, and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities—making breakfast, washing dishes and clothes, visiting friends, watching television and driving—were inconsistent with claim of total disability).

With regard to Plaintiff's physical and mental impairments, the record revealed that Plaintiff was treated conservatively for chronic pain syndrome, chronic back pain, and anxiety. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain).

Based on the medical records, Plaintiff also appeared to experience some relief for her physical and mental conditions. Specifically, Plaintiff testified that he had taken the same medications for pain and anxiety for seventeen years. (Doc. 13, p. 49). Moreover, during the relevant time period, Plaintiff consistently reported to Dr. Paul Daidone at Via Medical that her pain had improved with her current methadone regimen, and as a result her quality of life had also improved. (Doc. 13, pp. 265, 266, 267, 268, 269, 273). Furthermore, on those same occasions, she also reported that she was sleeping through the night and that she was able to participate in activities at home. (Doc. 13, pp. 265, 266, 267, 268, 269, 273). On other occasions, she reported that her pain was relieved by medication and that she did not have any

side effects from the medication. (Doc. 13, pp. 312, 320, 324, 332). An impairment which can be controlled by treatment or medication is not considered disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (citations omitted).

In determining credibility, the ALJ further took into consideration that Plaintiff performed work at a sedentary, light or medium level for many years with her alleged disabling conditions. (Doc. 13, p. 42-45, 62-65). "Working generally demonstrates an ability to perform a substantial gainful activity." Branson v. Astrue, 678 F. Supp. 2d 947, 960 (E.D. Mo. 2010) (citing Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005)).

Moreover, at the hearing before the ALJ, Plaintiff testified that her last employment as a lab tech/medical assistant ceased in 2014 when the company laid off several workers. (Doc. 13, pp. 44-45). Plaintiff further testified that she continued to look for work after she was laid off. (Doc. 13, p. 39). She stated that she was unable to find a job and that no one would hire her as a result of the medications she took on a daily basis. (Doc. 13, p. 39). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Branson v. Astrue, 678 F. Supp. 2d 947, 960 (E.D. Mo. 2010) (citing Johnson v. Apfel, 240 F.3d 1145, 1148-49 (8th Cir. 2001)).

Plaintiff also testified that she received unemployment benefits during the third and fourth quarters of 2014. (Doc. 13, p. 39). While the receipt of these benefits is not conclusive, applying for unemployment benefits adversely affects credibility because an unemployment applicant "must hold himself out as available, willing and able to work." Smith v. Colvin, 756 F.3d 621, 625 (8th Cir. 2014).

While it is clear that Plaintiff suffers with some degree of limitation, she has not established that she was unable to engage in any gainful activity prior to the expiration of her

8

insured status. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### D. The ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." Id.

"The [social security] regulations provide that a treating physician's opinion ... will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (citations omitted). An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Id. at 1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or

small, the ALJ must give good reasons for that weighting. Id. (citing 20 C.F.R. § 404.1527(d)(2)).

In the present case, when determining that Plaintiff could perform light work with limitations, the ALJ considered the relevant medical records, the medical opinions from treating, examining, and non-examining physicians, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

In his argument, Plaintiff points to an April 8, 2015, Medical Source Statement performed by her treating physician, Dr. Paul Daidone, where he opined that Plaintiff could occasionally and frequently lift less than ten pounds; could stand and/or walk less than two hours in an eight hour day; could sit less than six hours in an eight hour day; could never perform postural activities; and was limited in reaching overhead with her arms. (Doc. 13, pp. 304-306). The ALJ discussed the consultative examination and found that it was entitled to little weight as it was not supported by the record. (Doc. 13, p. 24). Specifically, Dr. Daidone cites only to Plaintiff's subjective complaints of back pain as support for the limitations he placed on her. (Doc. 13, p. 24). The ALJ also found that Dr. Daidone's assessment was in conflict with Plaintiff's own statements of her activities of daily living, as well as with his own treatment records. (Doc. 13, p. 24). As previously discussed, Dr. Daidone's clinical records revealed Plaintiff's reports that her pain had improved with her current methadone regimen, and as a result her quality of life had also improved; that she was sleeping through the night;

that she was able to participate in activities at home; and that she did not have any side effects from the medication. The medical records also showed that while Plaintiff's physical exams noted paraspinal muscle tenderness to palpation and complaints of pain with a decrease in her medication, many of her physical examinations showed that she had normal ROM, normal strength and tone, and negative straight leg raise test bilaterally in her cervical, thoracic and lumbar spine; normal joint stability, normal range of motion, and normal strength in her upper and lower extremities; a normal gait; and no evidence of depression. (Doc. 13, pp. 314-315, 318-319, 322-323, 326-327, 334).

The ALJ also discussed the non-examining medical consultants' physical assessments and gave them great weight due to the fact that their opinions were supported by the objective medical evidence as well as Plaintiff's reports that her pain levels improved with her medication, and that she was still able to perform activities of daily living, despite it taking her longer than it had previously. (Doc. 13, p. 23). However, the ALJ gave little weight to the Psychiatric Review Techniques performed by the non-examining medical consultants because Plaintiff had suffered from anxiety for many years, had been on medication for anxiety for many years, and testified that her pain level impacted her anxiety and her concentration, persistence and pace. (Doc. 13, p. 23). Thus, the ALJ determined that Plaintiff's anxiety was a severe impairment and limited her to more than simple tasks and instructions, but no complex tasks and instructions. See Brown v. Astrue, 611 F.3d 941, 951-52 (8th Cir. 2010) (The ALJ has the responsibility to determine which findings are inconsistent and which opinions should be given greater weight than other opinions.).

The ALJ also took Plaintiff's obesity into account when determining that Plaintiff could perform light work with limitations. Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009)

11

(when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal).

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination of light work with limitations.

### E. Past Relevant Work

Plaintiff has the initial burden of proving that she suffers from a medically determinable impairment which precludes the performance of past work. <u>Kirby v. Sullivan</u>, 923 F.2d 1323, 1326 (8th Cir. 1991). Only after the claimant establishes that a disability precludes performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work. <u>Pickner v. Sullivan</u>, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*
>
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); <u>Martin v. Sullivan</u>, 901 F.2d 650, 653 (8th Cir. 1990) (expressly approving the two part test from S.S.R. 82-61).

Here, the ALJ specifically found that Plaintiff could return to her past relevant work as a receptionist and file clerk. (Doc. 13, p. 24). In doing so, the ALJ relied upon the testimony of the Vocational Expert, who after reviewing the ALJ's proposed hypothetical question, which included the limitations addressed in the RFC determination discussed above, opined that the hypothetical individual would be able to perform Plaintiff's past relevant work. <u>See</u>

Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work.") (citations omitted). Accordingly, the Court finds substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as a receptionist and file clerk as those jobs are generally performed.

**IV.  Conclusion:**

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 28th day of August, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE